# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| THOMAS A. KURANDA, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 07-15107-MDC |

## MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

Before this Court for consideration is the Chapter 7 Trustee, Michael A. Kaliner's (the "Trustee") objection (the "Objection") to Proof of Claim No. 16 of Law Street Capital, LLC ("LSC"). LSC has asserted a secured claim against the debtor, Thomas A. Kuranda (the "Debtor") in the amount of $38,870.81[1] that arises from money advanced to the Debtor pursuant to an agreement titled "Law Street Capital LLC Funding Agreement." The Trustee contends that LSC's holds only an unsecured claim because the proceeds in which LSC asserts a secured claim are post-petition assets and at the time of the alleged pre-petition assignment represented a future interest.

Following an evidentiary hearing on April 26, 2011, and having considered the issues raised by the parties at the hearing and in their post-hearing filings, this Court finds that LSC has met its burden with regard to the Debtor's liability for its secured claim. On this basis, the Objection will be overruled.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2003, the Debtor and his former wife filed a complaint in the Montgomery County Court of Common Pleas for damages arising from defects in the construction of their home. The case was captioned *Thomas Kuranda v. Nick Conti, et al.*, Case No. 03-06224 (the "State Court Action").

---

[1] The claim register lists the dollar amount claimed on Proof of Claim No. 16 as $38,870.81. However, a further review of the claim reveals a payoff in the amount of $141,255.94 as of November 11, 2010. The precise amount of LSC's claim appears unclear. However, that issue has not been raised in the Objection and will not be addressed by this Court.

Subsequent to the commencement of the State Court Action, the proceeding was referred to common law arbitration before the American Arbitration Association. An arbitration hearing was held on three dates: October 18, 2005; October 25, 2005; and November 15, 2005. On January 18, 2006, the arbitrator entered an award in favor of the Debtor in the amount of $336,590.50 plus expenses for a total award of $340,782.50 (the "Arbitration Award").

In February 2006, the defendants to the Arbitration Proceedings challenged the award by filing a Motion to Vacate and/or Modify the Arbitration Award (the "Modification Motion") in a matter captioned *Thomas Kuranda v. Nick Conti, Les Stewart, Nick & Les, Inc., Stewart-Conti Development Company, Inc., and Prudential Diliberto & Murphy Realtor*," Court of Common Pleas, Montgomery County, Pennsylvania, Case No. 03-06224 ("State Court Proceeding"). After holding evidentiary hearings, the Montgomery County Court of Common Pleas issued an Order dated June 10, 2007, denying the Modification Motion and confirming the Arbitration Award (the "Confirmation Order"). On July 13, 2007, the Debtor filed a praecipe to enter the Arbitration Award as a judgment on the docket in the State Court Proceeding. In addition to the amount of the Arbitration Award, the Debtor requested that he be awarded $103,638.97 in post-award interest for a total judgment amount of $444,421.47 (the "Judgment Amount"). On July 23, 2007, the judgment defendants filed a Notice of Appeal of the Order of July 10, 2007, which was later quashed by the Pennsylvania Superior Court.

On September 4, 2007, and after the entry of the Confirmation Order, the Debtor entered into an agreement with LSC titled "Law Street Capital LLC Funding Agreement" executed September 4, 2007 (the "Funding Agreement"), whereby LSC advanced money to the Debtor in the total amount of $34,850 (the "Funded Amount") consisting of (1) a $30,000 payment to the Debtor; (2) a broker fee of $4,600 to Chestnut Hill Funding, Inc.; and (3) a $250 application fee. As consideration for the Funded Amount, the Debtor assigned a portion of his interest in "the proceeds of my lawsuit" to LSC. Amended Proof of Claim, Exh. T-2, ¶ 5. The Funding Agreement defines the term "proceeds" as "any money paid as a consequence of the lawsuit whether by settlement, judgment or otherwise." Amended Proof of Claim, Exh. T-2, ¶ 6. The Debtor's obligation to pay LSC the amount due pursuant to the Funding Agreement

2

was not triggered unless and until the Debtor received payment of the proceeds of his lawsuit. Amended Proof of Claim, Exh. T-2, ¶¶ 2 and 4. The terms of the Funding Agreement also provide that it shall be construed in accordance with the laws of the State of New York.

To secure repayment, the Debtor granted to LSC a security interest in and an assignment of proceeds of his lawsuit. The terms of the security interest are set forth in the Funding Agreement which states:

> "I hereby grant you a Lien and Security Interest *in the proceeds of the lawsuit*. The amount due you shall be withheld from any money collected as a result of this lawsuit and paid immediately upon collection to LSC. …"

Amended Proof of Claim, Exh. T-2, ¶ 19 (emphasis added).

With regard to the assignment of proceeds of the Debtor's lawsuit, the Funding Agreement states:

> "In signing this agreement, I am assigning *my interest in the proceeds of my lawsuit* to LSC in the amount described in the Full Disclosure Box. In the event that this assignment is not permitted by law, then I agree to pay LSC all of the funds due under this Agreement immediately upon the payment of the Lawsuit proceeds as a separate and independent obligation. I am granting a Security Interest and Lien to LSC in the same amount."

Amended Proof of Claim, Exh. T-2, ¶ 5 (emphasis added).

The Debtor subsequently confirmed the assignment of the proceeds of his lawsuit in an Irrevocable Letter of Instruction executed on September 6, 2007 (the "Assignment Letter"). In the Assignment Letter, the Debtor stated:

> This letter, along with copies of the Law Street Capital LLC Funding Agreement, will confirm that I am irrevocably assigning an interest in the proceeds from any settlement of my pending case (as described above) to Law Street Capital LLC.

Amended Proof of Claim, Exh. T-2. The Assignment Letter described the lawsuit as "Thomas Kuranda for the incident that occurred on or about 1/10/2005, or any other actions." The Assignment Letter provides no other description of the lawsuit.

Three days after entering into the Funding Agreement, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code dated September 7, 2007 (the "Petition Date"). On the same day, the Trustee was appointed in accordance with 11 U.S.C. § 701(a)(1). For over two and a half

3

years, the Trustee by and through his counsel attempted to collect on the Judgment Amount by levying on the property of the judgment defendants and opposing multiple attempts by the judgment defendants to challenge the Judgment Amount in both the state and federal courts. On January 7, 2010, the parties entered into a Settlement and Mutual Release (the "Settlement Agreement") that settled all claims and issues relating to the State Court Proceeding and claims made by the defendants against the Debtor. As part of the Settlement Agreement, the judgment defendants have agreed to pay and have already posted payment with the Chapter 7 Trustee in the amount of $556,000 ("Settlement Amount"). On February 3, 2010, the Trustee filed a motion with this Court to compromise the lawsuit and approve the settlement agreement. The Settlement Amount represents in excess of 160% of the Arbitration Award of $340,782.50 entered in January 2006 and 125% of the amount of the judgment entered on July 13, 2007. After receiving no objection to the Trustee's motion, this Court issued an Order dated February 22, 2010, approving the settlement agreement.

LSC filed a proof of claim on December 6, 2010, asserting a secured claim against the estate in the amount of $38,870.81 plus any accrued interest (the "Proof of Claim").[2] LSC asserts that its claim arises from the monies advanced pursuant to the Funding Agreement. As evidence of its claim, LSC attached a copy of a letter dated November 11, 2010, from LSC to the Debtor's counsel addressing the payoff amount. In addition, LSC attached a copy of the Debtor's client activity statement. The Debtor did not list LSC's claim on its schedules.

On February 21, 2011, the Trustee filed the Objection objecting to the Proof of Claim on the ground that LSC failed to attach a statement of account or other adequate evidence of any secured debt. The Trustee also asserted that LSC's interest was unperfected as of the Petition Date because, as of that date, LSC held no enforceable lien against the proceeds of the Debtor's lawsuit. The Trustee argues that the Funding Agreement and Assignment Letter did not assign to LSC any interest in the Arbitration Award or Judgment Amount. Rather, the Trustee states that pursuant to the explicit terms of the Funding Agreement and Assignment Letter, the Debtor assigned to LSC an "interest in the proceeds of my

---

[2] As noted in an earlier footnote, in the Proof of Claim LSC also lists a payoff in the amount of $141,255.94.

4

lawsuit." Amended Proof of Claim, Exh. T-2. Because the proceeds of the Debtor's lawsuit did not exist until the date of the Settlement Agreement, the Trustee argues that LSC's lien could not attach until after the execution of the Settlement Agreement, an event that occurred postpetition. On this basis, the Trustee argues that LSC's claim should be characterized as unsecured.

In response to the Trustee's Objection, LSC filed an amended proof of claim dated April 26, 2011 (the "Amended Proof of Claim"). The Amended Proof of Claim supplemented the writings originally submitted by LSC as proof of its claim. As further evidence of its claim, LSC included three attachments with its Amended Proof of Claim: (1) copies of documents evidencing the agreement between the Debtor and LSC that includes a copy of the security agreement between the Debtor and LSC as well as copies of two negotiated checks made out to the Debtor from LSC in the amount of $30,000 and $4,600; (2) a copy of a letter dated November 11, 2010, from LSC to the Debtor's counsel addressing the payoff amount and a copy of the Debtor's client activity statement;[3] and (3) a copy of a praecipe to enter judgment on arbitration award filed with the Court of Common Pleas of Montgomery County, Pennsylvania as of July 13, 2007.

LSC disputes the Trustee's characterization of its claim as being unsecured. LSC argues that the Funding Agreement transferred to it an assignment of an interest in an existing judgment and not a future interest because the Arbitration Award was entered in Montgomery County Court of Common Pleas prior to the execution of the Funding Agreement. On this basis, LSC states that its interest in the Arbitration Award was perfected prior to the Petition Date.

This Court held an evidentiary hearing on April 26, 2011, to address the parties' arguments. At the hearing, this Court heard the testimony of the Trustee as to the history of the State Court Action. Significantly, the parties agreed that there exists no dispute as to the relevant facts and agreed to allow this Court to take judicial notice of the exhibits to both the original Proof of Claim and the Amended Proof of Claim to be moved into evidence. However, the parties did disagree as to the application of New

---

[3] The second attachment to the Amended Proof of Claim is identical to the attachments included with LSC's original Proof of Claim.

5

York law. On the one hand, the Trustee argued that the Funding Agreement assigned to LSC the "proceeds of the lawsuit." On this basis the Trustee argued that LSC had an unsecured claim as of the Petition Date because LSC's security interest could not attach to the proceeds of the State Court Action until such proceeds were collected by the Trustee, an event that occurred post-petition.

On the other hand, LSC argued that under New York when a party assigns its interest in the proceeds of a lawsuit and when that party is then in possession of a judgment in that lawsuit, the security interest attaches immediately upon execution of the assignment.

Unable to resolve this issue from the bench, this Court requested that the parties submit post-trial briefs addressing the application of New York law to the facts of this case, and specifically, the time at which LSC's security interest attached to the proceeds of the State Court Action. This Court now being in possession of each party's post-trial brief and having given due consideration to the arguments made in both is now ready to issue its decision in this matter.

## LEGAL DISCUSSION

### I. The Parties' Respective Burdens

Allowance of a proof of claim is governed by 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3001(f). The Third Circuit has defined each party's respective burden in proof of claim litigation.

> "The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant."

*In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

Here, the parties do not dispute whether LSC has met its *prima facie* burden and agree that the

6

law of the State of New York controls the interpretation of the agreements. Rather, the parties concede that the only dispute relates to the interpretation of the language of the Funding Agreement and the Assignment Letter. Specifically, the parties disagree as to whether, as a matter of law, the Debtor's interest in the "proceeds of the lawsuit" remained contingent as of the Petition Date. The Trustee argues that the Debtor's interest in the "proceeds of the lawsuit" remained contingent until January 7, 2010, the date of the Settlement Agreement. On the other hand, LSC argues that the Debtor's interest in the "proceeds of the lawsuit" became fixed as of June 10, 2007, the date of the Confirmation Order confirming the Arbitration Award. Ultimately, this Court must decide whether, according to the terms of the Funding Agreement and applicable New York law, LSC's security interest in the proceeds of the lawsuit attached pre or post-petition.

## II. New York Law Governing the Assignment of the Proceeds of a Lawsuit

To determine the status of LSC's claim, this Court must determine when the Debtor's interest in the "proceeds of the lawsuit" became fixed. Complicating matters, each party advocates a separate interpretation of the relevant contractual term. The Trustee argues that the Debtor intended to transfer a sum of money and not the Debtor's interest in either the Arbitration Award or the Judgment Amount. On this basis, the Trustee argues that the Debtor's interest could not become fixed until the Debtor was actually in possession of the money paid as a result of the Settlement Agreement. In response, LSC argues that the Debtor intended to transfer the proceeds of his lawsuit inclusive of his interest in the Arbitration Award and Judgment Amount.

The determination of whether a contractual term is ambiguous constitutes a question of law. *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992); *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998). In determining whether a contractual term is ambiguous, this Court must look within the "four corners of the document" and interpret the disputed language in accordance with the parties' intent. *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998). Language that has a plain meaning "does not become ambiguous merely because the parties urge different interpretations in the litigation." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009). As stated by the Second Circuit, "[a]mbiguous language is

7

language that is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (quotations omitted). If this Court determines that the language is ambiguous, it may consider extrinsic evidence in deciding between two reasonable interpretations. *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992).

In determining the threshold question of whether the term "proceeds of my lawsuit" is ambiguous, this Court concludes that its meaning is clear. While this Court acknowledges that the Funding Agreement is not the model of draftsmanship, this Court is not convinced of the Trustee's interpretation. Specifically, this Court finds that the Trustee's interpretation confuses the time at which the Debtor's obligation to pay the proceeds to LSC arises with the time at which the Debtor's interest in the proceeds became sufficiently fixed to allow the attachment of LSC's lien.

Under New York law, the assignment of the proceeds of a lawsuit does not become an enforceable security interest until the grantor's interest in the proceeds becomes fixed. Until either a settlement is reached or a judgment is entered, a grantor's interest in the proceeds of a lawsuit remains a contingent, future interest. *Law Research Serv. v. Martin Lutz Appellate Printers*, 498 F.2d 836, 838 (2d Cir. 1974). However, upon entry of a judgment, a grantor's interest becomes a fixed, present interest. *Law Research Serv. v. Martin Lutz Appellate Printers*, 498 F.2d 836, 838 (2d Cir. 1974). In this case, the Debtor was the holder of an existing judgment as of the date of the execution of the Funding Agreement and the Assignment Letter. As a result, the Debtor's interest in the proceeds of the lawsuit became a fixed, present interest as of the date of the Confirmation Order. *Corn v. Marks (In re Marks)*, 192 B.R. 379, 384 (E.D. Pa. 1996) ("A Pennsylvania state court's judgment confirming an arbitration award is accorded the same status as any other state court judgment."). For this reason, this Court finds that LSC's

8

lien attached no later than September 6, 2007, the date of the Assignment Letter.[4]

The Trustee attempts to avoid this outcome by relying on *In re Andrade*, Bky. No. 10-42877, 2010 WL 5347535 (Bankr. E.D.N.Y. Dec. 21, 2010) and *Dunlap-McCuller v. Riese Organization, et al.*, Civ. No. 87-3961 (S.D.N.Y. Jul. 18, 1995). However, a close reading of both decisions indicates that the Trustee's reliance is misplaced.

Both *Andrade* and *Dunlap-McCuller* address a substantially similar factual and procedural situation. Like the Debtor, the debtor in both decisions each executed a prepetition assignment of the proceeds of a pending lawsuit that was subsequently settled postpetition. After filing for bankruptcy and appointment of a chapter 7 trustee, the trustee in each case challenged the secured status claimed by the assignee on the ground that, as of the petition date, the assignee's interest remained contingent and therefore the grantee's lien had not yet attached. *In re Andrade*, Bky. No. 10-42877, 2010 WL 5347535, at *2 (Bankr. E.D.N.Y. Dec. 21, 2010). Contrary to the Trustee's arguments, neither decision turned on whether the debtor intended to create a future interest in either a sum of money or a judgment. Rather, the decisions relied upon the fact that prior to the petition date neither debtor had yet obtained either a settlement of the lawsuit or a judgment on the claim. As a result, both debtors held as of their respective petition dates contingent, future interests to which each grantee's lien could not attach. For this reason, *Andrade* and *Dunlap-McCuller* are easily distinguishable.

Here, the Debtor, unlike the debtors in *Andrade* and *Dunlap-McCuller*, obtained a judgment prior to the Petition Date.[5] As recognized by the court in *Andrade*, "[t]he assignee's lien comes into existence only when a judgment is entered or a settlement is reached." *In re Andrade*, Bky. No. 10-42877, 2010 WL 5347535, at *2 (Bankr. E.D.N.Y. Dec. 21, 2010). Similarly, the court in *Dunlap-McCuller* stated that the "lien comes into existence only when the judgment was entered." *Dunlap-McCuller v. Riese Organization, et al.*, Civ. No. 87-3961, at *1 (S.D.N.Y. Jul. 18, 1995). Because no prepetition judgment

---

[4] The Funding Agreement was executed on September 4, 2007.
[5] The fact that the defendants in the State Court Action later appealed the Judgment Amount does not affect LSC's status. *Law Research Serv. v. Mart Lutz appellate Printers*, 498 F.2d 836, 839 (2d Cir. 1974) (recognizing that fact that judgment is subject to appeal or modification does not change status of lien holder). Therefore, according to the logic of *Andrade*, LSC's claim must be determined to be secured.

9

had been entered, both decisions held that the date of the postpetition settlement controlled for determining the status of each grantee's lien. In *Andrade*, the court specifically distinguished the case before it from cases like the Debtor's where "when the assignment was made the lawsuit had already been reduced to judgment and therefore the lien attached at the point of assignment." *In re Andrade*, Bky. No. 10-42877, 2010 WL 5347535, at *2 (Bankr. E.D.N.Y. Dec. 21, 2010) (distinguishing *Law Research Serv. v. Mart Lutz appellate Printers*, 498 F.2d 836 (2d Cir. 1974).

Here, the Debtor obtained a judgment confirming the Arbitration Award prior to executing the assignment of the "proceeds of my lawsuit." On this basis, this Court finds that as of the date of the Funding Agreement the Debtor held a fixed, present interest against which LSC's lien attached prepetition. *Law Research Serv. v. Mart Lutz appellate Printers*, 498 F.2d 836, 838 (2d Cir. 1974) ("it is clear that the assignment of an existing judgment is of a present, not a future, interest.").

The Trustee's attempt to avoid this outcome by interpreting the Funding Agreement to grant only an interest in specific money is also unavailing. The assignment in *Dunlap-McCuller* employed identical language to the assignment contained in the Funding Agreement. The relevant language provided for the assignment of "the proceeds of the lawsuit." Despite the Trustee's argument that the use of the term "proceeds" signaled the parties' intent to have LSC's lien attach only to money and not a judgment or arbitration award, the decision in *Dunlap-McCuller* turned on whether the lawsuit matured by judgment or settlement prior to the debtor's petition date. *Dunlap-McCuller v. Riese Organization, et al.*, Civ. No. 87-3961, at *1 (S.D.N.Y. Jul. 18, 1995) (stating the "lien comes into existence only when the judgment was entered"). The same logic applies here and precludes this Court adopting the interpretation of the Funding Agreement now advocated by the Trustee.

**S**UMMARY

This Court finds that prior to the Petition Date, the Debtor held a fixed, present interest in "the proceeds of the lawsuit."  Therefore, according to New York law, LSC has established that its lien attached to the proceeds of the lawsuit prior to the Petition Date.  For this reason, the Trustee's Objection is **OVERRULED**.

BY THE COURT:

*Magdeline D. Coleman*

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED:  FEBRUARY 17, 2012